IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CRYSTAL M. AGGISON,<br><br>    Defendant. | CRIMINAL ACTION NO.<br>1:22-MJ-718-RDC |

**OPINION AND ORDER**

This matter is before the Court in response to the Defendant's request for clarification regarding the procedural posture of the Court's ruling. On February 24, 2023, the undersigned entered a Report and Recommendation, [Doc. 21], addressing two matters: (1) Defendant's Motion to Dismiss, [Doc. 12] and (2) Defendant's Motion for Jury Trial, [Doc. 14]. After further consideration following a teleconference with both parties, the undersigned has determined that both motions should be resolved directly by **ORDER**, rather than by Report and Recommendation. Accordingly, the Clerk is **DIRECTED** to **WITHDRAW** the undersigned's previous Report and Recommendation, [Doc. 21], together with the corresponding Order for Service, [Doc. 22].

Pending before this Court is Defendant Crystal M. Aggison's Motion to Dismiss Information, [Doc. 12] and Motion for Jury Trial, [Doc. 14]. The Government filed its brief opposing these motions on January 12, 2023, [Doc. 19]. Ms. Aggison filed her reply brief on February 2, 2023, [Doc. 20]. For the reasons stated below, the Defendant's Motion to Dismiss Information is **GRANTED,** and her Motion for Jury Trial is **DENIED AS MOOT**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Ms. Aggison has been charged in a one-count Information with disorderly conduct in violation of 38 C.F.R. §1.218(a)(5). [Doc. 1]. The Information alleges the following:

> On or about August 2, 2022, in the Northern District of Georgia, the defendant, Crystal M. Aggison, did unreasonably obstruct the parking lot at the Atlanta Veterans Affairs Medical Center in Decatur, Georgia by striking a visitor to that facility in that same parking lot, all in violation of 38 C.F.R. §1.218(a)(5).

[Doc. 1].

According to the Government, Ms. Aggison, a civilian employee of the Department of Veterans' Affairs ("VA"), initiated a confrontation with a visitor in the parking lot of the VA Medical Center. [Doc. 19 at 1]. Ms. Aggison allegedly confronted the visitor because he parked his vehicle over a painted line. [*Id*.]. She instructed him to re-park his vehicle properly.[*Id*.]. The visitor complied, but as he

walked into the facility he called Ms. Aggison a "bitch" several times. [*Id.* at 1-2]. She responded by hitting him in the face. [*Id.* at 2]. One of Ms. Aggison's colleagues witnessed the altercation and intervened by grabbing her in an attempt to de-escalate the confrontation. [*Id.*]. The Government submits that the assault "and its immediate aftermath briefly blocked the entrance to the parking lot." [*Id.*]. As a result, it filed the pending Information on August 10, 2022. Ms. Aggison appeared before this Court for arraignment on August 16, 2022. (R. 3). Defense Counsel was appointed to represent her, and she was granted a personal recognizance bond. (Doc. 5). Counsel subsequently filed the pending motions on her behalf. [Docs. 12, 14]. The Government filed its brief opposing the requested relief, [Doc. 19], and Ms. Aggison has submitted her reply, [Doc. 20]. After careful review of the parties' pleadings and the applicable law, these motions are now ripe for review.

## II.   THE PARTIES' CONTENTIONS

Ms. Aggison submits that the Information must be dismissed because the regulation she allegedly violated is unconstitutionally vague as applied to her conduct. [Doc. 12 at 1-2]. She avers, *inter alia*, that §1.218(a)(5) fails to give "ordinary people" fair notice of the specific conduct it proscribes and that its usage of the terms "unreasonably obstructs" and "usual use" contributes to the ambiguity of its applicability. [*Id*. at 8-9]. Moreover, Ms. Aggison asserts that because case

3

law has not "clearly established" that the conduct in question constitutes disorderly conduct and the regulation does not contain a *mens rea* element, due process guarantees support her argument that this regulation did not fairly warn her that it would be applicable to her conduct. [*Id.* at 13]. Lastly, she argues that the rule of lenity is applicable in this context because the language of the general intent offense does not "clearly cover" the alleged confrontation. [Doc. 12 at 13; Doc. 20 at 6 ].[1] All of these deficiencies, she claims, undermine any contention that the regulation's applicability to her alleged criminal conduct can survive this constitutional challenge.

The Government argues Ms. Aggison's claims are meritless because this Circuit has previously rejected vagueness challenges in analogous cases. [Doc. 19 at 8-9]. It also claims that the facts establish Ms. Aggison's behavior violated the

---

[1] Ms. Aggison also brings two additional claims in support of her motion. First, she alleges that the Information is due to be dismissed because the Enabling Statute – 38 U.S.C. §901 – constitutes an unconstitutional delegation of legislative authority to the Department of Veterans' Affairs ("VA"). [Doc. 12 at 14-19]. Secondly, she submits that the Government's acknowledgement that the VA is not a "federal enclave" nor is it located within "the special maritime and territorial jurisdiction of the United States" raises a legitimate jurisdictional question that could also undermine the validity of the pending charge. [Doc. 20 at 13]. However, because this Court finds that §1.218(a)(5) is unconstitutionally vague as applied to the conduct alleged in this case -warranting dismissal of the Information on that basis - these alternative arguments will not be addressed.

regulation because she impeded the usual use of the parking lot, asserting that "usual use" means "to park cars, and also to drive to and from parking spaces before and after the cars are parked." [*Id.* at 5, 9]. The Government also asserts that because this Court has previously concluded regulations involving general intent crimes are not necessarily void for vagueness, Ms. Aggison's complaint concerning the absence of a *mens rea* element is groundless. [Doc. 19 at 12]. As for the rule of lenity, the Government submits that it is not applicable because Ms. Aggison has failed to establish that the regulation is vague as applied to her, nor has she offered legal authority justifying application of the rule in this context. [*Id.*].

In response, Ms. Aggison reiterates her assertion that the regulation fails to fairly apprise her of the conduct that justifies its application, emphasizing that ordinary people would not presume that a simple assault could be considered conduct that "unreasonably obstructs" the "usual use" a parking lot. [Doc. 20 at 1, 6]. She claims that this uncertainty, coupled with the Government's awkward attempt to fashion an incident typically litigated in state court into conduct governed by federal regulation, reinforces her assertion that §1.218(a)(5) is unconstitutionally vague as applied to her conduct. [*Id.* at 9-10].

### III.     LEGAL STANTARDS

Pursuant to the Due Process Clause of the Fifth Amendment, a statute or regulation is "void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *Keister v. Bell*, 29 F. 4th 1239 (11th Cir. 2022). Unconstitutionally vague laws fail to provide "fair warning" of what the law requires, and they encourage "arbitrary and discriminatory enforcement" by giving government officials the sole ability to interpret the scope of the law. *Grayned,* 408 U.S. at 108–09. In order to avoid this constitutional quandary, due process "insist[s] that laws give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108; *United States v. Williams*, 553 U.S. 285, 304 (2008), citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "What makes a statute vague is not the possibility that it will sometimes be difficult to determine whether the facts establish that the statute has been violated, but rather the uncertainty of precisely what facts would constitute such a violation." *United States v. Elliot,* No. 2:17-cr-33-RWS, Doc. 8 at 3 (N.D. Ga., Aug. 8, 2018). Thus, the void-for-vagueness doctrine requires that a penal statute define a criminal offense with such specificity that "ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Village of*

*Hoffman Estates v. Flipside,* 455 U.S. 489 (1982); *Connally v. General Construction Co.,* 269 U.S. 385 (1926). When the legislature fails to provide these minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Smith v. Goguen,* 415 U.S. 566, 575 (1974); *Kolender v. Lawson,* 461 U.S. 352, 357–58 (1983). Furthermore, "[t]he…principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Bouie v City of Columbia*, 378 U.S. 347 (1964), quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954).

The Supreme Court has recognized "three related manifestations" of the fair warning requirement. *United States v Lanier*, 520 U.S. 259, 266 (1997). It first noted that the vagueness doctrine prohibits the enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.* 520 U.S. at 266, quoting *Connally,* 269 U.S. at 391. Secondly, the rule of lenity - which ensures fair warning by resolving any ambiguity in a criminal statute in a defendant's favor – must be considered in this context. *Id.* And third, although this Court could glean a certain amount of clarity from a poorly crafted statute by applying "judicial gloss," due process prohibits courts from applying "a novel

construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id;* See, *Yates v. United States,* 574 US. 528 (2015). Accordingly, the ultimate benchmark of a statute's constitutional validity is whether, "standing alone or as construed," it makes "reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267.

Finally, if a criminal statue is ambiguous in its application to specific conduct, the rule of lenity requires that it be narrowly construed. "The rule of lenity is a canon of statutory construction that requires courts to construe ambiguous criminal statutes narrowly in favor of the accused." *United States v. Wright*, 607 F.3d 708, 716 (11th Cir. 2010)(Pryor, J., concurring). Further, "[i]n the construction of a penal statute, it is well settled…that all reasonable doubts concerning its meaning ought to operate in favor of [the defendant]." *Wooden v. United States*, 142 S. Ct. 1063, 1084 (2022), quoting *Harrison v. Vose*, 13 L. Ed. 179 (1850).

This Court must examine the entire text of the regulation, its structure, and the logical relationship all of its related provisions in interpreting the language of a statute. *Abramski v. United States*, 134 S.Ct. 2259, 2267 (2014); *United States v. McLemore,* 28 F. 3d 1160 (11th Cir. 1994). When a statute fails to define a term, courts must give words their common and ordinary meaning. *High Ol' Times Inc. v*

*Busbee*, 673 F.2d 1225, 1229 (11th Cir. 1982); <u>See</u> <u>Also</u>, *Watson v. United States*, 552 U.S. 74, 79(2007)("[w]ith no statutory definition or definitive clue, the meaning of [a word] has to turn on the language as we normally speak it…[We] look to 'everyday meaning.'").  Courts also turn to dictionary definitions for guidance when called upon to interpret the meaning of a statute. *United States v. Lopez*, 590 F.3d 1238 (11th Cir. 2009); *United States v. Murrel*, 368 F.3d 1283, 1287 (11th Cir. 2004) (citing The American Heritage Dictionary of the English Language for the plain and ordinary meaning of the term "induce"); *United States v. McNab,* 331 F.3d 1228, 1237 (11th Cir. 2003) (citing Black's Law Dictionary and Merriam Webster's Collegiate Dictionary for definitions of "law"). With these principles in mind, the undersigned turns to the matters at hand.

## IV.  DISCUSSION

Title 38 C.F.R. § 1.218(a)(5) provides, in pertinent part,:

> (a) Pursuant to 38 U.S.C. § 901, the following rules and regulations apply at all property under the charge and control of VA . . . and to all persons entering in or on such property . . .
>
> (5) Disturbances. Conduct on property which creates loud or unusual noise; which <u>unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots</u>; which otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language...is prohibited…

38 C.F.R. § 1.218(a)(5)(emphasis added).

In the instant case, the Government submits that Ms. Aggison violated this regulation when she confronted the visitor and struck him in the face during the ensuing dispute. This conduct, it argues, "temporarily blocked" the entrance to the parking lot thereby obstructing others' use of the entrance. [Doc. 19 at 5]. The Government alleges that the conduct outlined in the Information, along with images of the incident captured on a surveillance camera showing how Ms. Aggison blocked a traffic lane, provides a sufficient factual basis to sustain this charge. [Doc. 19 at 5, 9]. It also claims that the language of the regulation clearly informs a person of "common intelligence" that if she "engage[s] in fisticuffs on a piece of pavement, preventing vehicles from driving safely into the area," her conduct would constitute unreasonable obstruction of the usual use of the parking lot. [*Id.* at 9 -10]. This lack of ambiguity, it continues, belies Ms. Aggison's argument that the regulation is unconstitutionally vague as applied to her conduct.

Ms. Aggison counters these arguments on several grounds. First, she submits that the Government's reliance on facts not contained in the Information, namely the description of the confrontation captured on the surveillance camera, is improper because a court's determination of the viability of a motion challenging the sufficiency of an information is confined to the face of that pleading. [Doc. 20 at 3].

She also argues that the video recording actually undermines the Government's argument that her conduct obstructed access to the parking lot because it reveals that at least one vehicle was able to drive into the parking lot despite the on-going confrontation. [*Id.*]. Ms. Aggison's argument is well-taken. In ruling on a motion to dismiss that challenges the sufficiency of an information, this Court's review is limited to the facts offered on the face of the charging document and the language used in the offense. See, *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir. 1992)("[t]he sufficiency of a criminal indictment is determined from its face." ); Also, *United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir. 1987) ("a court may not dismiss an indictment … on a determination of facts that should have been developed at trial."). Therefore, the undersigned will only consider the facts presented in the four corners of the Information to resolve the pending motion.

Secondly, Ms. Aggison submits that the terms "unreasonably obstructs" and "usual use" contribute to the uncertainty of the applicability of the regulation to the charged conduct because they are inherently ambiguous. [Doc. 12 at 8-10]. As noted above, the undersigned must consider the "everyday meaning" of the words used in the regulation and dictionary definitions to analyze this constitutional claim. Merriam-Webster defines the word "obstruct" as "to block or close by an obstacle." (Obstruct, MERRIAM-WEBSTER, https://www.merriamwebster.com/dictionary

/obstruct (last visited February 23, 2023)). The word "unreasonable" is defined as conduct "not governed by or acting according to reason." (*Unreasonable*, MERRIAM-WEBSTER, https://www.merriamwebster.com/dictionary/unreasonable (last visited, February 23, 2023)).  And the word "usual" is defined as "accordant with usage, custom, or habit." (*Usual*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/usual (last visited, February 23, 2023)).

Ms. Aggison submits that these terms create the same ambiguity that has been condemned in *United States v. Estrada-Isglesias*, 425 F. Supp. 3d 1265 (D. Nev. 2019)(where court held regulation prohibiting "disorderly conduct" on federal property was unconstitutionally vague as applied to defendant who refused to abide by officers' instructions and began yelling obscenities and resisting arrest), *United States v. L. Cohen Grocery Co,* 255 U.S. 81, 90 (1921)(where a statute employing the term "unjust or unreasonable" was found to be unconstitutionally vague because it forbade "no specific or definite act. It confine[d] the subject-matter of the investigation which it authorizes to no element essentially inhering in the transaction as to which it provides [and]…leaves open…the widest conceivable inquiry, the scope of which no one can foresee.") and *United States v. Elliott*, No. 2:17-cr-33-RWS, Doc. 8 (N.D. Gal, Aug. 8, 2018).  This Court agrees.

In *Elliott*, an analogous case from this District, Senior District Judge Richard W. Story granted the defendant's motion to dismiss his citation alleging violations of 36 C.F.R. § 327.12 (c) when he ruled that the regulation was void-for-vagueness as applied to his conduct. Lonnie Elliot was charged with disorderly conduct after he was observed camping in the nude in a public park. Section 327.12 (c) prohibits any conduct that "interferes with, impedes or disrupts the use of the project or impairs the safety of another person." (Doc. 8 at 1). It also states that any person who is "boisterous, rowdy, disorderly or otherwise disburb[s] the peace on project lands or waters may be requested to leave the project."(*id.*). Mr. Elliot moved to dismiss the citation arguing, *inter alia*, that the regulation was void-for-vagueness as applied to his alleged conduct because it failed to provide fair warning of what conduct the regulation proscribed. (*id.* at 2). The Government disagreed, arguing that the regulation clearly applied to public nudity because such conduct could disrupt the peace and prevent other campers from enjoying the nature scenery. (*id.* at 4). It also claimed that the general catchall provision which prohibits activity that "otherwise disturb[s] the peace" applied to Mr. Elliot's conduct. The Magistrate Judge agreed and denied the motion to dismiss. (*id.*). Following a trial, Mr. Elliot was convicted and received a sentence of six months of probation, a fine, and a special monetary assessment. (*id.* at 2).

On appeal, Judge Story reversed the Magistrate Judge's ruling, concluding that the regulation did not necessarily encompass Mr. Elliot's passive conduct. (*id.* at 2-3). He found that the regulation intended to address conduct which "interferes with, impede[s] or disrupts the use of the project," but that it failed to "unambiguously criminalize Defendant's conduct in these circumstances." (*id.* at 4). The Court also reasoned that people of common intelligence "would likely disagree as to whether [Mr. Elliot's] conduct came within" the terms of the regulation. (Doc. 8 at 5).

Furthermore, the Court found the rule of lenity was applicable because the regulation failed to provide adequate notice that it would prohibit the charged conduct. (*id.*). Notably, Judge Story explained that no case law had been cited by the parties – nor found by the Court – to provide insight into whether the regulation was applicable to the specific conduct in question. (*id.* at 5-6). This absence of judicial interpretation, along with the fact that the regulation did not include a *mens rea* element, led the Court to conclude that the regulation was unconstitutionally vague as applied to Mr. Elliot's conduct. (*id.* at 6).

Likewise, in the case at bar, §1.218(a)(5) did not fairly warn Ms. Aggison that her alleged conduct would violate its provisions. The plain language of the regulation pertains to providing unobstructed access to a parking lot. As articulated

14

by Ms. Aggison, "assault" does not mean "obstruct." A person would not naturally assume that the "unreasonable obstruction" of access to a parking lot could be caused by an isolated act involving assault. Moreover, the "usual use" of a parking lot may encompass activity unrelated to simply parking a vehicle or "driving to and from parking spaces before and after" parking, such as walking, standing or smoking in a designated area. Thus, the scope of the regulation's applicability is exceedingly broad. The Government's contention that a person of common intelligence would understand that her involvement in a brief physical altercation would constitute unreasonable obstruction of the use of the parking lot requires a strained interpretation of the regulation's reach, one that does not comport with the "everyday meaning" of its terms.

The last tenet discussed in *Lanier, supra,* – the rule of lenity – also weighs in Ms. Aggison's favor. As both parties acknowledge, they were unable to locate case law that provides settled interpretations of the regulation's applicability to the charged conduct. This dearth of analysis, along with the absence of a *mens rea* element, only adds to the uncertainty of the applicability of this regulation to the alleged conduct. *Cf., United States v. Heaton*, No. 20-12568, 2023 WL 1978491, slip op. at 44-45 (11th Cir. Feb. 14, 2023)(where court rejected defendant's claim that a statute was unconstitutionally vague as applied to him because it identified

specific examples of the type of "condemned behavior" committed by other physicians that violated the statute, thus undermining his claim that the phrase "the usual course of his professional practice" lacked a standard defining what conduct it proscribed.). Accordingly, this Court finds that §1.218(a)(5) does not unambiguously criminalize Ms. Aggison's alleged behavior. Because this regulation did not make "reasonably clear at the relevant time that [Ms. Aggison's] conduct was criminal," it is void-for-vagueness as applied to her conduct. *Lanier*, 520 U.S. at 267.

## CONCLUSION

For all of the foregoing reasons, Ms. Aggison's Motion to Dismiss Information [Doc. 12] is **GRANTED** and her Motion for Jury Trial is **DENIED AS MOOT**, [Doc. 14].

**IT IS SO ORDERED** this 27th day of February, 2023.

REGINA D. CANNON
United States Magistrate Judge